**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PHILADELPHIA INDEMNIA INSURANCE COMPANY,

                    Plaintiff,

         v.

BELLIN MEMORIAL HOSPITAL, INC. and
KINSEY & KINSEY, INC.,

                    Defendants.

Case No. 22-cv-2246

Honorable Steven C. Seeger

Magistrate Judge Maria Valdez

**BELLIN MEMORIAL HOSPITAL, INC.'S MOTION
<u>FOR JUDGMENT ON THE PLEADINGS</u>**

Christopher J. Barber (ARDC # 6192190)
Williams & John Ltd.
233 S. Wacker Dr., Ste. 6800
Chicago, IL 60606
Phone: 312.443.3200
Fax: 312.630.8500

Defendant and Crossclaim Defendant Bellin Memorial Hospital, Inc. ("Bellin") hereby moves pursuant to Federal Rule of Civil Rule 12(c) for judgment to be entered in its favor on the pleadings, and respectfully states as follows in support:

## **INTRODUCTION**

Bellin prevailed on a breach of contract claim that had nothing to do with any negligent act, error, or omission. The judgment at issue arose from Kinsey & Kinsey, Inc. ("Kinsey") making an express warranty to implement a specific software and then not implementing that software. By making this choice, Kinsey breached its contract with Bellin. The errors and omissions policy issued by Philadelphia Indemnity Insurance Co. ("Philadelphia") only covers lability arising from negligent acts, errors, and omissions. Furthermore, the policy specifically excludes liability for breaches of express warranties, guarantees, or liabilities assumed under contracts. As such, there is no coverage for Bellin's judgment. Without coverage, there is no setoff available under Bellin's settlement agreement with one of Kinsey's employees.

Philadelphia and Kinsey have nevertheless decided to work together to persuade this Court that there is coverage, notwithstanding the plain language of the relevant insurance policy. On its face, this cooperation is strange. Bellin is unaware of any other case where an insurance company argued in favor of expanding the scope of its coverage beyond what is in the written policy. It is especially strange because Philadelphia has taken the exact opposite position in other cases, asserting that there is no coverage under its errors and omissions policies for breach of contract liability.

Philadelphia's motivation for filing this declaratory judgment action becomes clear, however, when placed in context. The insurer agreed to settle Bellin's claims against one of Kinsey's employees without Kinsey's consent, for the policy limit. Settling without Kinsey's consent was a breach of the insurance contract and left Kinsey with no further coverage in Bellin's

1

lawsuit. Philadelphia thus faces liability to Kinsey for proceeding with the settlement. To resolve this potential liability, Philadelphia has apparently decided to disregard its interpretation of its insurance policy in prior cases and agreed to claim that Kinsey's liability to Bellin for Kinsey's breach of contract is covered, regardless of what the relevant policy and settlement agreement say.

Despite this collusion, however, the policy language and the terms of the settlement agreement remain unchanged. There is no coverage for Kinsey's breach of express warranties under the relevant insurance policy. Without any coverage, there is no setoff under the relevant settlement agreement. This Court should thus enter judgment in favor of Bellin and bring this façade of a case to a swift end.

## **BACKGROUND FACTS**

### A. **Bellin enters into a contract with Kinsey and Kinsey makes an express warranty that it will implement a specific software**

Pursuant to a Master Service & Support Agreement ("Master Agreement") and two Statements of Work, Kinsey contracted with Bellin to implement[1] software known generally as Enterprise Resource Planning ("ERP") software, which assists large institutions in managing their finance, procurement, and human resources departments. Compl., Ex. B ¶¶37-40. Kinsey represented to Bellin prior to execution of the contract and in the contract that it would install and implement a specific software module called Global Human Resources ("GHR"). *Id*. at ¶¶2,4. For Bellin, the implementation of GHR was the most important aspect of its project with Kinsey because it had such a large staff and its existing human resources software was antiquated. *Id*. at ¶¶17-19. In the Master Agreement, Kinsey made seven express warranties to Bellin, one of which was that Kinsey's services would "strictly comply with the descriptions and representations as to

---

[1] "Implementation" is a process that involves installing software, customizing the software to address the organization's needs, and training the organization's employees on how to use it.

the work (including performance capabilities, completeness, specifications, configurations, and function) that appear in the Statement of Work or any Amendments to the Statement of Work." *Id.* at ¶¶44, 102; *see also* Answer, Ex. 4, §4.4. In the Statements of Work to the Master Agreement, Kinsey promised to install and implement GHR. Compl., Ex. B ¶¶39-40.

### B. Kinsey does not implement the software it warranted to implement

Kinsey never implemented GHR. *Id.* at ¶57. Instead, it implemented an older version of software called S3. *Id.* at ¶50. At the point of the implementation when Kinsey disclosed that it was not going to implement GHR, Bellin had already paid Kinsey over $1,000,000 and was a month away from transitioning from its existing software to its new software system. *Id.* at ¶60. Upon learning that Kinsey was implementing S3, Bellin demanded that Kinsey implement GHR— the software that Kinsey had warranted to implement. *Id.* at ¶61. Kinsey refused to implement GHR without Bellin agreeing to pay Kinsey an additional $136,200 on top of what Bellin had already agreed to pay under the Master Agreement. *Id.* at ¶62.

### C. Bellin sues Kinsey in Wisconsin

Bellin sued Kinsey, its principal owner, Brad Kinsey, and Kinsey's employee who claimed he could implement GHR, Brian Thome ("Thome"), in the Circuit Court of Brown County, Wisconsin (the "Wisconsin court"). *Id.* at p.4. Bellin alleged that Kinsey, Brad Kinsey and Thome negligently or intentionally misrepresented their experience implementing GHR and had engaged in deceptive business practices to induce Bellin to enter into the Master Agreement. *Id.* at ¶¶70-100. Bellin also alleged that Kinsey breached the Master Agreement by failing to implement the proper software. *Id.* at ¶¶101-114. Bellin claimed that it incurred $3 million in damages. *Id.* at ¶69.

### D. The Wisconsin court rules on summary judgment that Kinsey materially breached the Master Agreement by not implementing GHR as it had promised

Kinsey moved for summary judgment prior to trial. Answer, ¶16. Kinsey's main argument

3

in its motion was that a limitation of liability contained in section 4.2 of the Master Agreement limited Bellin's damages to $100,000. Answer, Ex. 2; *see also* Answer, Ex. 4, §4.2. The Wisconsin court ruled that the limitation of liability did not apply because "Client Losses" were excluded from the limitation of liability provision. Answer, Ex. 2, p.9. "Client Losses" was defined in the Master Agreement as "any material breach by Kinsey or Kinsey's personnel of any provision of this Agreement…" *Id*.; *see also* Answer, Ex. 4, §4.3. The Wisconsin court found that "[b]ecause Kinsey & Kinsey agreed to implement GHR under the Master Agreement and it failed to do so, it materially breached the Master Agreement and the Statement of Work." Answer, Ex. 2, pp.9-10. The Wisconsin court denied Kinsey's motion for summary judgment and Bellin proceeded to trial on all four of its claims: (1) intentional misrepresentation against all defendants, (2) negligent misrepresentation against all defendants, (3) violation of the Wisconsin Deceptive Trade Practices Act against all defendants, and (4) breach of contract against Kinsey. *Id*. at p.10.

**E.    Bellin reaches a settlement agreement with Thome and dismisses its negligence claims against all defendants**

During the trial, Bellin entered into a settlement agreement with Thome (the "Thome Settlement"). Under the Thome Settlement, Bellin was paid $1 million—the liability limit under Kinsey's insurance policy from Philadelphia Indemnity Insurance Company ("Philadelphia"), Cover-Pro Policy No. PHS1161594 (the "2016 Policy"). Answer, ¶16. The settlement amount was paid by Philadelphia under the 2016 Policy pursuant to Thome's coverage as a Kinsey employee. In exchange, Bellin dismissed its intentional misrepresentation, negligent misrepresentation, and statutory claims against Thome. *Id*. Bellin also agreed to apply a setoff of the settlement amount against any liability incurred by Kinsey and Brad Kinsey to the extent that either of them incur "any liability to Releasor [Bellin] within the scope of coverage provided under" the 2016 Policy. Compl., Ex. C, ¶8.

The Thome Settlement conformed with *Pierringer v. Hoger*, 124 N.W.2d 106 (1963), a Wisconsin Supreme Court case that sets forth how damages are to be apportioned between joint tortfeasors in a negligence action when one tortfeasor settles and the other does not. *Id.* at ¶10. Based on *Pierringer* and a plain reading of the 2016 Policy—which covered only *negligent* acts, errors and omissions—when Bellin entered into the Thome Settlement, Bellin understood that the only claims against Kinsey and Brad Kinsey that were covered by the 2016 Policy were its claims for negligent misrepresentation. Answer, ¶¶16-17. Bellin did not believe that its claims for intentional misrepresentation, deceptive business practices, or breach of contract were covered by the 2016 Policy. *Id.* Thus, after entering into the Thome Settlement, Bellin dismissed its negligent misrepresentation claims against Kinsey and Brad Kinsey. *Id.* at ¶16.

### F. Kinsey objects to the Thome Settlement because Philadelphia entered into the Thome Settlement without Kinsey's consent

Upon Bellin's dismissal of its negligent misrepresentation claims, Kinsey objected on the record to the Thome Settlement. Answer, ¶15. Kinsey stated that "[t]his settlement is being made without Mr. Kinsey or Kinsey & Kinsey's approval … and they wish – are preserving their contractual rights under their policy of insurance" with Philadelphia. *Id., * Ex. 1, p.5. The Wisconsin court recognized "that may be a fight for another day." *Id.* Kinsey objected because Philadelphia had agreed under the 2016 Policy that it "shall not settle any claim without [Kinsey's] consent[.]" Compl., Ex. A, §I.B.

### G. The Wisconsin Jury renders a verdict against Kinsey and in favor of Bellin only on Bellin's breach of contract claim against Kinsey

After dismissal of its negligent misrepresentation claims, Bellin proceeded to verdict on claims that were not within the scope of coverage under the 2016 Policy—its intentional fraud claim, its statutory fraud claim, and its breach of contract claim. The jury found in favor of Kinsey and Brad Kinsey on the intentional fraud and statutory fraud claims. *See* Answer, Ex. 3, pp.1-2, 4-

5. After the court directed a verdict in Bellin's favor on its breach of contract claim against Kinsey, the jury awarded Bellin $1.39 million on that claim. *Id.* at 7. The verdict was later reduced to a $786,749.29 judgment because of a limitation of liability provision in the Master Agreement that the Wisconsin court enforced post-verdict. *See* Compl., Ex. D, p.25.

## **ARGUMENT**

The setoff in the Thome Settlement is limited to liability "within the scope of coverage" of the 2016 Policy. Compl., Ex. C, ¶8. Bellin's judgment resulted from a successful claim for breach of contract arising from Kinsey's breach of certain warranties that it made under the Master Agreement. Kinsey's breach of contract did not arise from any negligent act, error or omission by Kinsey. Without a negligent act, error, or omission giving rise to the judgment, there is no coverage under the 2016 Policy. Further, the 2016 Policy contains an exclusion provision that bars coverage for any breach of an express warranty, which is precisely what precipitated Kinsey's liability.

Philadelphia argues the opposite in this case—i.e., that there is coverage, and that the relevant exclusion does not apply. Both Kinsey and Philadelphia claim that Philadelphia's position demonstrates that there is indeed coverage. But Philadelphia has taken the exact opposite position in every other case involving the same issue that Bellin's counsel could locate, as have other insurers. The only identifiable reason that Philadelphia is interpreting its insurance policy differently now in this case to purportedly provide coverage is because it breached the 2016 Policy by entering into the Thome Settlement without Kinsey's consent. To avoid getting sued by Kinsey for this breach, Philadelphia has apparently agreed to take a position favorable to Kinsey, notwithstanding its position in prior cases. The Court should not condone this collusion, and conclude, as a matter of law, that there is no coverage under the 2016 Policy, there is no setoff under the Thome Settlement, and that judgment should be entered in Bellin's favor.

I. **There is no setoff for Bellin's judgment under the Thome Settlement because the setoff only applies to liabilities "within the scope of" the 2016 Policy, and Kinsey's liability for Bellin's judgment is outside the scope of the 2016 Policy's coverage**

Kinsey warranted under contract to implement a specific piece of software for Bellin: GHR. But Kinsey instead implemented a different software, breaching its express warranty and thus breaching the contract. The Wisconsin court concluded on summary judgment that Kinsey's failure to implement the proper software was a straightforward breach of contract. *See* Answer, Ex. 2, pp.9-10. The court did not find any negligent act, error, or omission that precipitated this breach. Kinsey simply did not implement the software it promised to implement. This type of breach does not trigger an insurance policy that only covers negligent acts, errors, or omissions.

The 2016 Policy covers "**damages** resulting from any **claim** first made against [Kinsey] during the **policy period** . . . arising out of a **wrongful act** . . . ." Compl., Ex. A, p.29, §I.A (emphases in original). The policy defines "Wrongful Act" as:

> a negligent act, error, or omission committed or alleged to have been committed by **you** or any person for whom **you** are legally responsible in the rendering of **professional services**. **Wrongful Act** shall include **personal injury** arising out of the rendering of **professional services**.

Compl., Ex. A, p.32, §II.P (emphases in original). A "Wrongful Act" under the 2016 Policy is thus a negligent act, a negligent error, or a negligent omission. *See Ill. State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 2012 IL App (1st) 111810, ¶ 18 (finding that "negligent act, error, or omission" is a "very common" phrase where "'negligent' modifies act, error, and omission."); *see also Cambridge Mut. Fire Ins. Co. v. 1347-49 N. Sedgwick Condo. Ass'n*, No. 12 C 878, 2013 U.S. Dist. LEXIS 9750, at *12 (N.D. Ill. Jan. 23, 2013) ("Courts in this district that have interpreted similar definitions of 'wrongful act' have held that 'negligent' modifies 'act' as well as every relevant term of the definition.").

The Wisconsin court did not find that Kinsey committed a negligent act, error or omission.

7

Instead, on summary judgment, the court found as follows:

> [Kinsey] failed to implement GHR and instead implemented S3, an older version of the software. They thus did not provide a service related to the implementation of Infor/Lawson Software that they agreed to provide under the Master Agreement. Because Kinsey & Kinsey agreed to implement GHR under the Master Agreement and it failed to do so, it materially breached the Master Agreement and the Statement of Work.

Answer, Ex. 2, pp.9-10. The court then entered a directed verdict on Bellin's breach of contract claim, and the jury awarded damages solely for Kinsey's breach of contract. Answer, Ex. 3, pp.6-7.

Courts interpreting language like the definition of "Wrongful Acts" in the 2016 Policy have held that such language does not cover breach of contract. The Seventh Circuit has explained that "[i]nsurance law fixes a line of demarcation between negligent acts and breaches of contract." *Hartford Cas. Ins. Co. v. Karlin, Fleisher & Falkenberg, LLC*, 822 F.3d 358, 359 (7th Cir. 2016) (citation and quotation marks omitted). Indeed, "insurance policies are presumed <u>not</u> to insure against liability for breach of contract." *Hartford*, 822 F.3d at 359-60 (emphasis added) (quoting *Krueger Int'l, Inc. v. Royal Indemnity Co.*, 481 F.3d 993, 996 (7th Cir. 2007)).

As explained in Bellin's opposition to Kinsey's TRO motion [Docket No. 17], the facts of the *Hartford* case are instructive. There, the insured was a law firm with an employment contract for one of its attorney employees. *Hartford*, 822 F.3d at 359. Upon retirement, the attorney employee claimed to be owed $950,000 under his contract. *Id*. The firm did not pay, and the employee sued for breach of contract. *Id*. The firm sent the complaint to its insurer, Hartford, seeking coverage for the potential debt to the attorney employee. *Id*. Hartford denied coverage and thereafter sued the firm, seeking a declaration that its policy did not cover the claim. *Id*.

The relevant policy in *Hartford* contained the same relevant coverage language as the 2016 Policy: covering only an "injury that arises out of any negligent act, error or omission" in connection with the administration of employee benefits. *Id*. Despite what Kinsey argued in its

TRO reply [Docket No. 22], this is exactly the same negligence coverage as provided under the 2016 Policy. Just like the policy in *Hartford*, the 2016 Policy only covers "a negligent act, error, or omission" by Kinsey or its agents.

Looking at this coverage language, the Seventh Circuit concluded in *Hartford* that there was no coverage for the insured firm's failure to make the contract payment to its former employee because the firm "was not insured against a breach of contract" under the policy. *Id.* at 360. Just as Philadelphia and Kinsey are doing in this case, the firm tried to evade this clear distinction between negligence and breach of contract by claiming that the breach of contract was precipitated by a negligent act, error, or omission. Unlike Kinsey, however, the insured firm in *Hartford* actually attempted to identify the precipitating negligent act—that the breach (nonpayment of amounts owed) was the result of a negligent failure to maintain accurate employment records, and thus that any resulting injury was the result of a negligent act. *Id.* The court rejected this argument, reasoning that the employee's claim did not arise from a negligent act, "as would have been the case had the [firm], for example, through carelessness mailed the money due him to a different person and the money had never been recovered . . . ." *Id.* Instead, the court observed that "the defendants had refused to pay him what they were contractually obligated to pay him," which is simply a breach of contract, not negligence. *Id.*

Here, by contrast, Kinsey and Philadelphia have failed to identify any negligent act, error, omission that precipitated Kinsey's breach of contract. If anything, this case is more clearcut than *Hartford*. But even if Kinsey and Philadelphia made this effort, it would fail, just as it failed in *Hartford*. Kinsey's liability for not implementing certain software as required by its contract is functionally identical to the law firm's liability in *Hartford* for failing to make a payment as required by its contract. Kinsey contracted to implement GHR software for Bellin. It chose not to

do so. *See* Answer, Ex. 2, p.9-10. Once Bellin learned about Kinsey's noncompliance with the contract it asked Kinsey to implement the correct software, but Kinsey refused to do so unless Bellin paid Kinsey additional money. *Id*. at p.6. This is not negligence. It is a simple, straightforward breach of contract. Bellin did not allege, nor did the Wisconsin court find, that Kinsey *negligently* failed to implement the GHR software. The judgment entered against Kinsey is only for its breach of contract—which is not a "wrongful act" under the 2016 Policy. Thus, Kinsey did not "incur any liability to [Bellin] within the scope of coverage provided under" the 2016 Policy. *See* Compl., Ex. C, ¶8.

Philadelphia's decision to defend Kinsey in the Wisconsin case is irrelevant, contrary to what Kinsey argued in its TRO reply. Even if Philadelphia waived coverage defenses by failing to reserve its rights, such waiver does not re-write the 2016 Policy. It merely limits the defenses that Philadelphia could raise if Kinsey ever sued for coverage. Moreover, Philadelphia's purported waiver only clarifies the insurer's motivations in this case. If Kinsey were to sue Philadelphia for entering into the Thome Settlement without Kinsey's consent, Philadelphia could likely claim that Kinsey suffered no damages because the only liability Kinsey ultimately faced—for breach of contract—is not covered. But if, as Kinsey argued in its TRO reply, Philadelphia waived that argument by not reserving its rights, Kinsey could potentially seek damages from Philadelphia up to the amount of Bellin's judgment. As such, any claim to waiver by Philadelphia has no bearing on whether Bellin's judgment is within the scope of coverage of the 2016 Policy—the policy remains unchanged, and Bellin has not waived anything. Instead, Kinsey's waiver argument explains why Philadelphia is bending over backwards to argue in favor of coverage in this case, despite that such an argument is against Philadelphia's own interests and is contrary to the position it has taken in prior cases.

II.    **The 2016 Policy expressly excludes liability for breaches of express warranties, and Kinsey's liability for Bellin's judgment resulted from breaching an express warranty**

Kinsey's liability for breach of contract is also excluded from coverage under Exclusion H in the 2016 Policy, which states as follows:

> [Liability a]rising out of, resulting from, based upon or in consequence of, directly or indirectly, any express warranties or guarantees or any liability you assume under contract unless you would have been legally liable in the absence of such contract.

Compl., Ex. A, p.33, §III.H. In its breach of contract claim, Bellin alleged that Kinsey breached certain warranties set forth in the Master Agreement. *Id*., Ex. B, ¶¶102-109. In one such provision, Kinsey "warrant[ed] that the work will strictly comply with the descriptions and representations as to the work . . . that appear in the Statement of Work" or any amendments thereto. Answer, Ex. 4, §4.4(i). The Statement of Work, in turn, states that Kinsey would implement and train Bellin on the GHR software. *Id*., Ex. 2, p.5. As the Wisconsin court found, Kinsey did not implement the GHR software, thus breaching its express warranty. *Id*. at 9-10. Even if Philadelphia and Kinsey could persuade the Court that Kinsey's breach was precipitated by a negligent act, Exclusion H would still bar coverage.

Any reliance on *Crum & Forster Specialty Ins. Inc. v. DVO, Inc.*, 939 F.3d 852 (7th Cir. 2019), is misguided. The exclusion at issue in *Crum* eliminated coverage "[b]ased upon or arising out of . . . breach of contract . . . regardless of whether 'bodily injury', 'property damage', 'personal advertising injury' or a 'wrongful act' is alleged." *Id.* at 855. In other words, the exclusion in *Crum* flattened the distinction elucidated in *Hartford*—a breach of contract arising from a "negligent act", which is covered under a negligence policy, versus a breach of contract arising from mere nonperformance, which is not. The *Crum* court concluded that such a broad exclusion covering any negligent act related to a professional services contract—and actions related to a contract was

11

the only context in which professional services coverage would ever be needed—essentially wrote all plausible coverage out of the policy, rendering it illusory. *Id.* at 855, 857.

Here, by contrast, the exclusion is not nearly so broad. It includes "any express warranties or guarantees or any liability you assume under contract unless you would have been legally liable in the absence of such contract." Compl., Ex. A, p.33, §III.H. The exclusion does not extend to any "wrongful act" giving rise to a breach of contract, like the exclusion at issue in *Crum*. Indeed, the stated exception—"unless you would have been legally liable in the absence of such contract"—demonstrates that negligent acts, errors, or omissions *are* covered. And Bellin readily admits that its claim for negligent misrepresentation would qualify as a "wrongful act" that would be within the scope of coverage and not subject to any exclusion. But Bellin dismissed such claims after the Thome Settlement. This exclusion is nothing like the expansive one at issue in *Crum*. It does not render the entire 2016 Policy illusory, which makes *Crum* inapposite.

## III. Philadelphia and other insurers routinely enforce exclusions like Exclusion H to deny coverage for breach of contract claims against insureds

Philadelphia and other insurers routinely take the position that exclusions like Exclusion H in the 2016 Policy preclude their insureds from insurance coverage for breach of contract liability. In 2012, in a suit filed by Philadelphia Consolidated Holding Corp.,[2] the insurer sought "a declaratory judgment that Philadelphia has no duty to provide coverage or to indemnify" its insured because of Exclusion H contained in its 2007 and 2008 errors and omissions policies. Answer, Ex. 5, p.97.[3] Exclusion H in those policies was nearly identical to Exclusion H in the 2016 Policy at issue here; it excluded coverage for liability arising from "any express warranties or guarantees or; the Insured assuming liability under contract unless the Insured would have been

---

[2] Philadelphia Consolidated Holding Corp. is the parent company of Philadelphia. *See* Philadelphia's Corp. Disclosure, p.1.
[3] For citations to Exhibit 5, the page number refers to the page number stamped by the Northern District of Illinois.

legally liable in the absence of such contract." *Id*. at p. 91, ¶35 and p.94, ¶42. The insured in that 2012 case was a software implementation consulting company, like Kinsey, who was sued for allegedly breaching "its contract and implied warranties of merchantability by failing to provide a fully functioning software program as contemplated in the parties' contract." *Id*. at p. 89, ¶ 22. The insurer claimed that "even if [the underlying plaintiff] Hodell's claims were held to fall within the available coverage under Philadelphia's 2008 policy, which Philadelphia denies, several exclusions would be available to bar coverage, namely, Exclusion H, excluding coverage for any express warranties or guarantees." *Id*. at p.97, ¶ 49.

In 2015, Philadelphia filed a declaratory judgment action to enforce Exclusion H contained in errors and omissions policies issued to its insureds in 2013 and 2014. *Id*. at p.108. The Exclusion H in those policies is verbatim to Exclusion H in the 2016 Policy. *Id.* at p.108, ¶44. Philadelphia's insured was sued because it made a mistake that caused at least $844,992 in damages for its client. *Id.* at p.100, ¶9. Philadelphia sought a declaratory judgment that there was no coverage for the insured's potential liability for that mistake. *Id.* at p.108. Specifically, Philadelphia alleged that the work done by the insured "was pursuant to contract" and that "[t]here would have been no legal obligation [of the insured] to perform consulting services for [the healthcare client] in the absence of a contract[.]" *Id*. at p.108, ¶¶45-46. As such, Philadelphia alleged that coverage was excluded because the related liability arose out of a contractual obligation, which was expressly excluded under the insurance policy. *Id.*, p.108, ¶47.

In 2016, Philadelphia filed another declaratory judgment action to again enforce Exclusion H of its errors and omissions policy issued to its insured in 2014. *Id*., p.115-116. The underlying suit was a class action by condo owners against companies that managed renting the condos for the owners. *Id.*, p.111, ¶6. The condo owners alleged breach of contract and other claims against

the insured defendants. *Id.* Philadelphia claimed that Exclusion H barred coverage because the alleged liability arose from "contractual obligations such that coverage is excluded under the Policy." *Id.*, p.115, ¶29. Philadelphia thus sought "a declaratory judgment that there is no coverage afforded for or duty to defend the Complaint under the Policy." *Id.*, p.115, ¶35.

Thus, despite years of declining coverage for breach of contract claims made under similar policies, Philadelphia has decided to reinterpret its 2016 Policy to benefit Kinsey's position in this case. At the same time, Kinsey has apparently withdrawn its objection to the Thome Settlement and now seeks to benefit from an incorrect interpretation of that agreement. This Court should see through these machinations—Philadelphia is colluding with Kinsey to avoid liability for breaching the 2016 Policy, and Kinsey is using Philadelphia's vulnerability to try and persuade this Court that the 2016 Policy covers the liability finding against Kinsey. *See* Kinsey's Counterclaim and Crossclaim, ¶9 ("Plaintiff, the insurer, and Kinsey & Kinsey, the insured, agree that the claim giving rise to the judgment was covered by the Policy.") This is nothing but a façade.

**IV.    The Thome Settlement is a *Pierringer* release that only applies to negligence claims and the application of a setoff for Kinsey and Brad Kinsey ended when Bellin dismissed its negligent misrepresentation claims**

The Thome Settlement incorporated and is based on a seminal Wisconsin case, *Pierringer v. Hoger*, 124 N.W.2d 106 (1963). *Pierringer* relates to apportioning damages between joint tortfeasors alleged to be liable for negligence when one defendant settles before trial and another does not. *Id.* at 192. A *Pierringer* release, such as the one in the Thome Settlement, does not apply to breach of contract claims. *See Estate of Kriefall v. Sizzler United States Franchise, Inc.*, 2011 WI App 101, ¶34 ("It is axiomatic that a Pierringer release can only function in a setting involving joint *tortfeasors*") (emphasis added). Thus, when Bellin dismissed its negligent misrepresentation claims against Kinsey and Brad Kinsey after the Thome Settlement, the release and setoff described in paragraph 8 of the Thome Settlement ceased to apply.

14

"Wisconsin does not recognize an inherent cause of action for every negligent performance of a contractual obligation." *McDonald v. Century 21 Real Estate Corp.*, 132 Wis. 2d 1, 6 (Ct. App. 1986). Therefore, the duty and resulting damages arising from a breach of contract claim are separate and distinct from the duty and damages arising under a tort theory. A duty under a tort theory arises in law, whereas a duty under a contract arises pursuant to the parties' agreement. *Id.* at 8. For instance, parties can agree in their contract upon a predetermined liquidated damages amount or can agree to limit damages in their contract. There is also no contributory negligence reduction in a breach of contract action.

Here, Bellin had both a valid tort claim against all defendants and a valid breach of contract claim against Kinsey. But, as recognized under Wisconsin law, those claims were always distinct in both duty and damages. When Bellin dismissed its negligent misrepresentation claims against Kinsey and Brad Kinsey, it essentially elected to pursue damages under breach of contract and intentional tort theories instead of a negligent tort theory. With the dismissal of Bellin's negligent misrepresentation claims, the *Pierringer* release contained in the Thome Settlement no longer applied—which was precisely what the parties intended.

## CONCLUSION

For the reasons set forth above, Bellin respectfully requests that this Court grant Bellin's motion for judgment on the pleadings and enter judgment in Bellin's favor and against Philadelphia.

Respectfully Submitted,

Dated: June 14, 2022

*/s/ Christopher J. Barber*

*One of the Attorneys for Defendant and Crossclaim Defendant Bellin Memorial Hospital, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 14, 2022, he caused the forgoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the parties hereto, each a registered CM/ECF user in this case.

/s/ *Christopher J. Barber*
Christopher J. Barber
